PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHESAPEAKE EXPLORATION, L.L.C., | ) | |
| | ) | CASE NO. 4:16CV00150 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DALE H. HENCEROTH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF Nos. 17 and 21] |

Pending is Plaintiff Chesapeake Exploration, L.L.C.'s Motion for Summary Judgment on Count II, ECF No. 17.  The motion is fully briefed, *see* ECF Nos. 18 and 20.  Also pending is Defendants' ("Royalty Owners") related Motion for Leave to Take Discovery on the Point of Sale and Title Transfer, ECF No. 21.  That motion is fully briefed as well, *see* ECF Nos. 24 and 25.  For the reasons set forth below, Chesapeake Exploration's motion for summary judgment is granted, and the Royalty Owners' motion for leave to take discovery is denied.

## I.  Background

Chesapeake Exploration succinctly summarizes the pertinent background of this matter as follows:

> This case is part of a web of overlapping class actions filed in multiple tribunals—on behalf of overlapping groups of the same landowners—all by the same counsel, and all based on the same basic premise that Chesapeake entities allegedly underpaid royalties due under oil and gas leases [("Leases")]. . . . [O]ne group of landowners [(the Royalty Owners)] initiated the [*Hale* Arbitration] before the American

(4:16CV00150)

> Arbitration Association[,] seeking to recover for alleged underpayment of royalties against their contractual counterparty, Chesapeake Exploration . . . .

Brief in Support, ECF No. 17-1 at PageID #: 253.[1]  It is undisputed that the Royalty Owners' Leases include arbitration provisions that require the parties to this action to arbitrate the underlying claims.  *See* Joint Statement of Undisputed Facts, ECF No. 26 ¶¶ 7–10.  In the *Hale* Arbitration, the Royalty Owners assert a breach of contract claim, and seek to proceed with arbitration on a class-wide basis.  *See* Class Arbitration Demand and Complaint, ECF No. 18-1 at PageID #: 508–09.

Chesapeake Exploration filed this declaratory judgment action, asking the Court to issue two declarations regarding the *Hale* Arbitration: (1) that the Court, not an arbitrator, decides whether class arbitration is available; and (2) that the arbitration must proceed as individual arbitration rather than class arbitration.  *See* Complaint, ECF No. 1 ¶ 3.  The Royalty Owners consented to the entry of judgment in favor of Chesapeake Exploration on Count I, agreeing that it is for the Court to decide whether class arbitration may be imposed.  *See* ECF Nos. 16 and 19.  Chesapeake Exploration now moves for summary judgment on the sole remaining count of the Complaint, Count II—the question of whether class arbitration is available under the Leases.[2]

---

[1]  The following are the related cases: *Hope Christian Fellowship, et al. v. Chesapeake Energy Corporation, et al.*, Case No. 4:15CV02275 (N.D. Ohio) ("*Hope Chrisitian*"); *Henceroth, et al. v. Chesapeake Exploration, LLC*, Case No. 4:15CV02591 (N.D. Ohio) ("*Henceroth*").

[2]  Chesapeake Exploration also submits that the Court should (1) grant the Motion to Compel Individual Arbitration pending in *Hope Christian* at ECF No. 15, and (2) "transfer any remaining portion of the *Hope Christian* action, along with the *Henceroth* action, to *Kovach v. Access Midstream Partners, L.P., et al.*, Case No. 5:15CV00616,

(continued...)

(4:16CV00150)

*See* ECF No. 17.  After briefing on the motion for summary judgment coonconcluded, the Royalty

Owners filed a motion to take discovery on the *situs* of sale and title transfer of the oil and gas

that is the subject of the Leases at issue.  *See* ECF Nos. 21.  The Court held in abeyance its ruling

on the motion to take discovery, noting its untimeliness.  *See* Order, ECF No. 23 (stating that the

Court's April 22, 2016 Minutes Order required Defendants to request such discovery, if

necessary, *before* responding to the motion for summary judgment).

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

---

[2](...continued)
also pending the Northern District of Ohio (in Akron), given the overlap between the
*Henceroth* and *Kovach* actions and classes."  *See* Brief in Support, ECF No. 17-1 at
PageID #: 253–54.  While there is overlap between the facts, parties, and counsel in some
or all of these cases, the cases were filed separately.  The Court declines the invitation to
address a case other than the one now before it.

(4:16CV00150)

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### III. Discussion

### A. Applicability of the Federal Arbitration Act

Chesapeake Exploration contends that the Federal Arbitration Act ("FAA") governs this action. The Royalty Owners dispute its applicability. The Court analyzes the issue below.

4

(4:16CV00150)

### (i)  Interstate Commerce Requirement of the FAA

"The FAA applies to '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . .'" *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting 9 U.S.C. § 2).  At issue in this case is whether the Leases involve interstate commerce, as required for application of the FAA.  The Royalty Owners assert that the Leases do not, arguing that (1) Chesapeake Exploration sells the oil and gas it produces at the well and the buyer takes title at the well, *i.e.,* the sale occurs before the oil and gas enter the stream of interstate commerce; (2) the Royalty Owners and Chesapeake Exploration are not parties to the resale of the gas; and (3) the Royalty Owners believe that even the resale occurs in Ohio.  Opposition, ECF No. 18 at PageID #: 447-48.  In its Reply, Chesapeake Exploration neither admits nor denies that the sale and title transfer take place at the well.  *See* ECF No. 20.  As a result, the Royalty Owners, viewing the *situs* of the sale as dispositive of whether the FAA's interstate commerce requirement is satisfied, filed their belated motion for leave to take discovery on this issue.  *See* ECF No. 21.

The U.S. Supreme Court has addressed the scope of the FAA's interstate commerce factor:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.  Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"-that is, "within the flow of interstate commerce,"

(4:16CV00150)

> . . . .

> . . . Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice ... subject to federal control." Only that general practice need bear on interstate commerce in a substantial way.

*Citizens Bank v. Alafabco, Inc.* 539 U.S. 52, 56-57 (2003) (citations omitted).

A court in the Northern District of New York applied this rubric to a case concerning an oil and gas lease dispute between royalty owners and Chesapeake Appalachia, a Chesapeake Exploration affiliate. *Alexander v. Chesapeake Appalachia, LLC*, 839 F. Supp. 2d 544 (N.D.N.Y. 2012). Resolving the parties' disagreement as to the applicability of the FAA, the court held,

> Applying [the] guidelines [set forth in *Citizens Bank*], the leases here fall within the extent of Congress' Commerce Clause power. Although the oil and gas leases at issue involve real property only in New York, the plaintiff landowners in New York negotiated the subject leases with CAP, an Ohio company and CNR, a Delaware limited liability company. Those leases have since been acquired by Chesapeake, an Oklahoma limited liability company and Statoil, a Delaware corporation. Further, *while no drilling has yet been commenced on the properties and thus no gas has been found nor shipped in interstate commerce, the contracts clearly evidence transactions involving interstate commerce.* As defendants point out, *the leases' primary purpose is the development of gas resources which will ultimately be placed in an interstate pipeline subject to federal regulation.* . . . Accordingly, the leases satisfy the FAA's "involving commerce" test and the FAA will be applied.

*Id.* at 550 (emphasis added).

Also, resolving a dispute between royalty owners and Chesapeake Appalachia, a court in the Middle District of Pennsylvania has recently held,

> While the Lease at issue involves real property solely situated in Pennsylvania and the [royalty owners] are Pennsylvania residents, the subject Lease was negotiated

6

(4:16CV00150)

> with Chesapeake, an Oklahoma company. Even if the gas produced by Chesapeake is sold at the wellhead in Pennsylvania, the Lease is clearly part of a chain of transactions involving interstate commerce for it is well-established that the end use of the natural gas and oil extraction in the Marcellus Shale is not simply contained within  Pennsylvania's borders. Accordingly, the Lease satisfies the FAA's "involving commerce" test and the FAA will be applied.

*Chesapeake Appalachia, L.L.C. v. Ostroski, et al.*, Case No. 4:16CV00050, Document 36 (M.D. Pa. Aug. 8, 2016); Chesapeake Exploration's Notice of Supplemental Authority, ECF No. 27.

In light of the broad scope of the FAA's interstate commerce factor, the Royalty Owners' position is untenable.  The Royalty Owners are Ohio residents.  Joint Statement of Undisputed Facts, ECF No. 26 ¶ 11.  They entered into the Leases with Chesapeake Exploration, an Oklahoma company.  Class Arbitration Demand, ECF No. 18-1 ¶ 15.  They have received their royalty checks from Chesapeake Operating, L.L.C., an Oklahoma company.  Joint Statement of Undisputed Facts, ECF No. 26 ¶ 11.  Furthermore, the Royalty Owners have conceded that the processed natural gas that is the subject of their Leases is ultimately transported "through pipes to the interstate pipeline system."  Class Arbitration Demand, ECF No. 18-1 ¶ 33; *see also id.* ¶ ¶ 76, 89.  Construing these uncontested facts against the broad, inclusive scope of the FAA's interstate commerce factor, the Court finds that there is no genuine dispute of material fact that the Leases substantially affect interstate commerce for purposes of the FAA.

The Court need not determine the *situs* of sale and title transfer, as the  analysis does not turn on that issue. [3]   The Royalty Owners' Motion for Leave to Take Discovery on the Point of

---

[3]  The Court also need not find that the Leases are conveyances of real property. *See* Opposition, ECF No. 18 at PageID #: 450 (arguing that oil and gas leases are conveyances of real property, and therefore are not subject to the FAA).  The analysis

(continued...)

(4:16CV00150)

Sale and Title Transfer, ECF No. 21, is therefore denied.

### (ii) Judicial Estoppel

The Royalty Owners contend that Chesapeake Exploration is judicially estopped from

asserting that the FAA applies. *See* Opposition, ECF No. 18 at PageID #: 462. The Sixth

Circuit has explained the concept of judicial estoppel:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in
> maintaining that position, he may not thereafter, simply because his interests have
> changed, assume a contrary position, especially if it be to the prejudice of the party
> who has acquiesced in the position formerly taken by him." . . . [I]t is
> well-established that at a minimum, "a party's later position must be 'clearly
> inconsistent' with its earlier position[]" for judicial estoppel to apply[.] Moreover,
> the doctrine of judicial estoppel "is applied with caution to avoid impinging on the
> truth-seeking function of the court because the doctrine precludes a contradictory
> position without examining the truth of either statement."

*Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (citations

omitted).

The Royalty Owners urge the Court to apply this principle, stating,

Chesapeake cannot argue that its oil and gas leases evidence a transaction
involving interstate commerce, having argued the exact opposite in *Riggs* and

---

[3](...continued)

does not turn on this issue either. Moreover, the argument is unsupported. The Royalty
Owners cite to an Ohio Supreme Court opinion resolving a quiet title action, wherein the
Court explains that minerals (such as oil and gas) that underlie the surface of land are
realty, *see id.* at PageID #: 450-52 (citing *Chesapeake Exploration, L.L.C. v. Buell*, 144
Ohio St.3d 490, 45 N.E.3d 185 (2015)). The Royalty Owners' arbitration demand,
however, makes no mention of mineral rights; only the calculation of royalty interests are
in dispute. *See* Class Arbitration Demand and Complaint, ECF No. 1-1. And, the Ohio
Court of Appeals has unequivocally stated, "A royalty interest is personal property."
*Pollock v. Mooney*, No. 13 MO 9, 2014 WL 4976073, at *2 ¶ 16 (Ohio Ct. App. Sept. 30,
2014).

(4:16CV00150)

> *New Hope*.  Moreover, it is bound under judicial estoppel to the argument of its sister gas production company in Pennsylvania, Chesapeake Appalachia, L.L.C., in *Katzin*, *Ulmer*, *Rodriguez*, *Hayes*, *Eisenburger*, *Beinlich*, *Ball*, *Wallrath*, *Paulhamus*, and *Stiles*.

Opposition, ECF No. 18 at PageID #: 462.  Chesapeake Exploration retorts,

> In none of these cases [cited by the Royalty Owners] did Chesapeake invoke the state arbitration law in an effort to *avoid* arbitration.  Moreover, in none of the cases cited by [the Royalty Owners] was the question of the applicable law disputed—in each, the parties ***concurred*** that the state law applied in those specific cases based on those specific facts.

Reply, ECF No. 20 at PageID #: 935.

The Royalty Owners have not shown that the applicability of the FAA was actually litigated in the cases they cite.  *See Thompson v. Davidson Transit Org.*, 563 F. Supp. 2d 820, 830 (M.D. Tenn. 2008) ("[T]he defendant has cited no case, and the court has found none, where judicial estoppel was applied even though the parties did not litigate the allegedly inconsistent position in the prior proceeding. . . . In fact, the Sixth Circuit seems to require that the 'first court has adopted the position *urged by the party* . . . .'") (citation omitted).  Nor have they shown that that the application of state law in those cases effected a different outcome than would have resulted under application of the FAA.  *Lorrilard Tobacco Co.*, 546 F.3d at 757 (noting that, for judicial estoppel to apply, "a party's later position must be 'clearly inconsistent' with its earlier position") (citation omitted).  And, as explained below, the Royalty Owners cannot demonstrate that they would reap a different result under application of Ohio arbitration law.  For these reasons, the Court declines to apply the principle of judicial estoppel.

The FAA applies to the arbitration provisions of the Leases.

9

(4:16CV00150)

### B. Availability of Class Arbitration under the FAA

Decidedly, under the FAA, when an arbitration provision is silent as to the availability of class arbitration, a court may not impose it. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 687 (2010)* ("We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings."); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 599-600 (6th Cir. 2013)* ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it. . . . [T]he absence of a class-action right does not render an arbitration agreement unenforceable."); *Huffman v. Hilltop Cos., LLC, 747 F.3d 391, 398-99 (6th Cir. 2014)* ("As was also the case in *Reed Elsevier*, here the parties' arbitration clause nowhere mentions classwide arbitration. We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually.") (citation omitted).

The Royalty Owners concede that "[i]n briefing before this Court, [they] stated that 'the arbitration provisions in the leases in this case are silent as to class arbitration.'" *See* Joint Statement of Undisputed Facts, ECF No. 26 ¶ 14 (citing Plaintiffs' Opposition to M. to Compel Individual Arbitration & for a Stay, ECF No. 17, *Hope Christian Fellowship v. Chesapeake Energy Corp.*, No. 4:15-cv-02275 (N.D. Ohio Feb. 5, 2016)). Indeed, a review of the arbitration provisions in the Leases confirms that the provisions are silent on this issue. *See id. ¶¶ 8–10.*

10

(4:16CV00150)

Therefore, applying the FAA, the Court finds that the arbitration clauses in the Leases do not authorize classwide arbitration.

### C. Availability of Class Arbitration under Ohio Law

Assuming *arguendo* that Ohio arbitration law, rather than the FAA, applies, it appears the outcome would be no different. To be sure, Ohio appellate courts have not addressed whether class arbitration can be imposed when the arbitration provision is silent as to its availability. As such, this Court is tasked with forecasting how the Ohio courts would find on the issue. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) ("If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data."). Asserting that Ohio courts would mandate class arbitration in the face of silence, the Royalty Owners cite to two Ohio Court of Appeals decisions, wherein the court found class arbitration waivers to be unconscionable. *See* Opposition, ECF No. 18 at PageID #: 463 (citing *Eagle v. Fred Martin Co.*, 809 N.E.2d 1161 (Ohio Ct. App. 2004), and *Rude v. NUCO Educ. Corp.*, No. 25549, 2011 -Ohio- 6789, 2011 WL 6931516 (Ohio Ct. App. Dec. 30, 2011)). The Royalty Owners reason, "If an arbitration may proceed on a class basis in Ohio despite contractual language precluding class arbitration, an arbitration may certainly proceed on a class basis when the contract is silent." *Id.* at PageID #: 462-63.

The Royalty Owners' argument is unavailing. In the cases they cite, the Ohio Court of Appeals found the class arbitration waivers unconscionable based on the particular circumstances of each case. *See, e.g.*, *Eagle*, 809 N.E.2d at 169 ¶ 45 (noting that "in consumer transactions, and

11

(4:16CV00150)

especially those involving necessities such as automobiles . . . closer scrutiny is necessary for the preservation of the protections afforded consumers through legislation such as the [Consumer Sales Practices Act]); *Rude*, 2011 WL 6931516 at *4 ¶ 12 (noting that the arbitration provision was embedded in a contract of adhesion that evidenced a consumer transaction for the provision of educational services).  Those facts are not sufficiently analogous to the facts that underlie this action.  Additionally, in the case at bar, the question before the Court does not concern explicit class arbitration waivers or unconscionability.  The question is whether a party to a contract can be forced to arbitrate on a class basis when the arbitration provision does not address the issue at all.

More importantly, the Royalty Owners' position does not reflect the current trend of the Ohio Court of Appeals.  In cases more recent than those cited by the Royalty Owners, the Ohio Court of Appeals has adopted the position of the Sixth Circuit on a closely related question of class arbitration—whether a court or an arbitrator decides whether class arbitration is available. *See*, *e.g.*, *Bachrach v. Cornwell Quality Tools Co., Inc.*, No. 27113, 2014 WL 7454687, at *4 ¶¶ 13-14 (Ohio Ct. App. Dec. 31, 2014); *Shakoor, et al. v. VXI Global Solutions, Inc.*, No. 14 MA 59, 35 N.E.3d 539, 546–47 ¶¶ 34–36 (Ohio Ct. App. June 16, 2015).

In *Bachrach*, the Ohio Court of Appeals held,

> After a review of the relevant case law, we are persuaded by the rationale of the Sixth Circuit as stated in *Reed Elsevier, Inc*. While not directly addressing the issue presented here, the United States Supreme Court, "characterized the differences between bilateral and classwide arbitration as 'fundamental.'" *Id.* at 598, quoting *Stolt–Nielsen*, 559 U.S. at 686. Because the issue of whether the dispute may be arbitrated as a class is "fundamental to the manner in which the parties will resolve their dispute," the issue is more aligned with a threshold matter and must be decided by the court, absent an agreement to the contrary. *Id.* at 598–599.

12

(4:16CV00150)

2014 WL 7454687, at *4 ¶¶ 13–14.

The Court maintained this position in *Shakoor*, holding,

The Sixth Circuit has clearly stated that [class arbitration] is a gateway issue and provided two reasons for such conclusion. First, it cited the language in *Stolt–Nielsen*, that it cannot be presumed that the parties consented to class arbitration simply by agreeing to submit their dispute to an arbitrator. [*Reed Elsevier, Inc.*], 734 F.3d at 598. Second, it referenced the differences between bilateral and class arbitration that were discussed in *Stolt–Nielsen. Id.* The court concluded that the question of whether the parties agreed to class arbitration is "vastly more consequential than even the gateway question of whether they agreed to arbitrate bilaterally." *Id.* at 599. It then reasoned that "[a]n incorrect answer in favor of classwide arbitration would 'forc[e] parties to arbitrate' not merely a single 'matter that they may well not have agreed to arbitrate[,]' but thousands of them." *Id.*

. . . .

. . . Considering all the above, we are in agreement with our sister district's decision in *Bachrach* which adopted the Federal Sixth Circuit Court of Appeal's decision in [*Reed Elsevier, Inc.*] that class arbitration is an issue for the judiciary, unless the agreement specifies otherwise.

35 N.E.3d at 546–47 ¶¶ 34–36.

In *Bachrach* and *Shakoor*, the Ohio Court of Appeals cites the U.S. Supreme Court's and Sixth Circuit's recognition of the fundamental differences between bilateral and class-wide arbitration. Aligning with that perspective, the Ohio Court of Appeals agreed that when an arbitration provision is silent as to whom decides whether class arbitration is available, that determination must be left to the judiciary. Considering the analysis set forth by the Ohio Court of Appeals in resolving that related question, the Court is persuaded that Ohio courts would also agree that the differences between class and bilateral arbitration are too great to compel class arbitration in the face of silence.

13

(4:16CV00150)

Accordingly, the Court finds that the same result is reached whether the FAA or Ohio law is applied.  That is, because the arbitration provisions are silent as to class arbitration, the Royalty Owners may not compel it.

### IV.  Conclusion

For the foregoing reasons, Chesapeake Exploration's motion for summary judgment (ECF No. 17) is granted, and the Royalty Owners' motion for leave to take discovery (ECF No. 21) is denied.

IT IS SO ORDERED.


 September 29, 2016                         /s/ Benita Y. Pearson
Date                                    Benita Y. Pearson
                                        United States District Judge

14